**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MENIO GLOBAL, LLC,

               Plaintiff,

       -v-                               5:24-CV-690 (AJB/ML)

CCS GLOBAL LLC,

               Defendant.

_____

**APPEARANCES:**                                **OF COUNSEL:**

TULLY RINCKEY PLLC                 CAROL A. CROSSETT, ESQ.
Attorneys for Plaintiff
420 Lexington Avenue, Suite 1601
New York, NY 10170

FOLEY & LARDNER LLP              ANNE B. SEKEL, ESQ.
Attorneys for Defendant
90 Park Avenue
New York, NY 10016

COOLEY LLP                          DANIEL F. BERNARD, ESQ.
Attorneys for Defendant
55 Hudson Yards
New York, NY 10001

FOLEY & LARDNER LLP              MAUREEN MATHIS STEWART,
Attorneys for Defendant             ESQ.
100 North Tampa Street, Suite 2700
Tampa, FL 33602

Hon. Anthony Brindisi, U.S. District Judge:

## DECISION and ORDER

## I.    INTRODUCTION

This is a contract dispute between plaintiff Menio Global, LLC ("Menio Global" or "plaintiff"), a credit card processing company, and defendant CCS Global LLC ("CCS Global" or "defendant"), Menio Global's referral partner.

On April 17, 2024, Menio Global filed this action, a seven-count complaint against CCS Global, in Supreme Court, Onondaga County, alleging breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, tortious interference, and unfair competition. Compl. Menio Global also seeks an accounting, injunctive relief, and money damages. *Id.*

On May 20, 2024, CCS Global removed the action to federal court based on diversity jurisdiction. Dkt. No. 1. CCS Global subsequently moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Counts Two through Seven, *i.e.*, all of Menio Global's non-breach-of-contract claims. Dkt. No. 6.

The motion has been fully briefed and will be GRANTED based on the parties' submissions without oral argument.

## II.    BACKGROUND

The following facts come from Menio Global's complaint, Compl., and are assumed to be true for the purpose of resolving CCS Global's motion to dismiss.

Menio Global is a New York company that provides credit card processing models and related proprietary services to other businesses. Compl. ¶¶ 2, 6, 10. CCS Global is a Florida company that entered into a contractual relationship with Menio Global in 2020. *Id.* ¶ 10.

Broadly stated, CCS Global agreed to refer third-party merchants to Menio Global in return for a share of residual monthly profits. *Id.* ¶¶ 12-13. Multiple contract provisions governed CCS Global's interactions with third-party merchants. *Id.* ¶¶ 14, 19, 21-22.

A contract executed on April 30, 2020, the Referral Agreement Payout Contract (the "Referral Agreement"), established the parties' relationship. Compl. ¶ 10. Under the Referral Agreement, CCS Global agreed to refer third-party merchants to Menio Global in exchange for "50% of the net monthly residuals" Menio Global earned while its third-party relationships remained in effect. *Id.* ¶¶ 12-13. The Referral Agreement further provided that "expressed written consent" was required to share information related to the parties' relationship, and that "[a]ll information shared between [Menio Global] and [CCS Global] is confidential." *Id.* ¶ 14.

The parties amended the Referral Agreement on November 2, 2022, through an addendum (the "Addendum"). Compl. ¶ 19. Among other things, the Addendum provided that CCS Global "will not seek out other referral or business relationships that would conflict with this relationship." *Id.*

Alongside the Referral Agreement and the Addendum, the parties agreed to additional conduct limitations. Compl. ¶ 21. These prohibited CCS Global from "disclosing any details of their Contract, including payout percentages to anyone outside of Menio Global," and from "inquiring into the status of any other Referral Partners and their relationship with Menio Global." *Id.* ¶¶ 21-22.

Eventually, Menio Global discovered that CCS Global had begun to establish third-party relationships that fundamentally conflicted with the parties' business relationship. Compl. ¶¶ 27-39. For example, CCS Global "engaged in a bait and switch sales strategy" in which it misrepresented to third-party merchants its relationship to Menio Global, including by stating

that it was part of, or even the same company as, Menio Global, to gain new business. *Id.* ¶¶ 27-29. CCS Global fabricated customer service issues with Menio Global to third-party merchants as a means of misdirecting business to itself. *Id.* ¶ 33. And to gain a further competitive advantage over Menio Global, CCS Global began to provide credit card processing services to some third-party merchants it had lured away from Menio Global. *Id.* ¶ 36-39. At base, CCS Global "obtained control of the referrals through false pretenses and . . . other wrongful conduct," costing Menio Global at least $11 million. *Id.* ¶¶ 45, 65.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions can provide a framework for the complaint, they must be supported with meaningful factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess the plausibility requirement, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the Court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated to it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

IV.    **DISCUSSION**

Menio Global's complaint asserts seven causes of action: a breach of contract ("Count One"), unjust enrichment ("Count Two"), a breach of the implied covenant of good faith and fair dealing ("Count Three"), tortious interference ("Count Four"), unfair competition ("Count Five"), an accounting ("Count Six"), and injunctive relief ("Count Seven"). Compl.

CCS Global has moved to dismiss Counts Two through Seven. Dkt. No. 6-1. Broadly speaking, CCS Global makes two arguments: first, that the factual allegations underlying Counts Two through Five fall entirely within the contract and are thus legally barred or otherwise duplicative; and second, that Menio Global has abandoned Counts Six and Seven. *See generally id.*

A.    **Count One Bars Counts Two through Five**

The Court agrees. Count One survives, and the Court will discuss it as relevant to its analysis of Counts Two through Five. In Count One, Menio Global alleges that CCS Global breached the parties' contract, specifically including "the restriction against . . . using [CCS Global's] position as Referral Partner 'to seek out other referral or business relationships that would conflict with this relationship.'" Compl. ¶ 57. Menio Global viewed this activity, alongside CCS Global's other misconduct, as "a material breach of the essential terms of the Agreements." *Id.* ¶ 62. This is the crux of Menio Global's breach-of-contract claim—as well as its other substantive causes of action.

The allegations in Counts Two through Five fail to support separate causes of action because they rest on the same conduct alleged as a breach of contract.

1. **Unjust Enrichment**

Count Two, Menio Global's unjust-enrichment claim, must be dismissed for this reason. Because unjust enrichment sounds in quasi contract, plaintiffs can recover under such a theory only "in situations where no legal contract exists." *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982). Thus, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987). Such is the case here.

Menio Global's unjust-enrichment claim merely restates its breach-of-contract claim. Count One alleges that CCS Global entered third-party relationships that conflicted with its relationship with Menio Global in "material breach" of the parties' contract. Compl. ¶¶ 57, 62. In Count Two, Menio Global similarly claims that CCS Global "exploit[ed] its role as a Referral Partner to engage in commercial piracy *in contravention of the terms of the Agreements*," explicitly referring to the contract governing the same subject. *Id.* ¶ 67 (emphasis added).

Setting aside Count Two's explicit reference to the breach of contract alleged in Count One, Menio Global fails to allege any other conduct that could support a separate unjust enrichment claim. Merely using new words for the same activities—for example, by referring to CCS Global's "bait and switch strategy" to attract new business partners as "actions to unjustly enrich themselves," *id.* ¶¶ 68-69—neither describes different behavior nor removes the conduct from the contract's scope.

Characterizing Count Two as pled in the alternative does not save this claim from dismissal. Both parties cite to *Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*, 2020 WL 7042642 (E.D.N.Y. Nov. 30, 2020), Menio Global for the proposition that it may

assert unjust enrichment in the alternative to breach of contract, Dkt. No. 15-5 at 12, and CCS

Global to emphasize that doing so would require claiming that "'the parties' contract was void or

otherwise unenforceable.'"  Dkt. No. 16 at 7-8 (quoting *Chartwell Therapeutics Licensing, LLC*,

2020 WL 7042642 at *11).

        CCS Global's reading is correct.  *See, e.g.*, *Stanley v. Direct Energy Servs., LLC*, 466 F.

Supp. 3d 415, 430-31 (S.D.N.Y. 2020) ("[W]here the validity of a contract that governs the

subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the

claimant cannot plead unjust enrichment in the alternative under New York law.").  Because the

parties do not dispute the contract's validity and Menio Global has alleged that a breach

constituting the same conduct occurred, Menio Global's unjust enrichment claim must be

dismissed.

**2.    Implied Covenant of Good Faith and Fair Dealing**

        Count One likewise precludes Count Three, Menio Global's claim alleging a breach of

the implied covenant of good faith and fair dealing.  "Under New York law, parties to an express

contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach

of the underlying contract.'"  *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d

1052, 1056 (2d Cir. 1992) (quoting *Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215

(S.D.N.Y. 1991)).  Therefore, courts will dismiss as redundant a claim alleging a violation of the

implied covenant of good faith and fair dealing where the same conduct also allegedly

constitutes a breach of contract.  *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d

Cir. 2002) (citing *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 244 (S.D.N.Y. 1997)).  For

that reason, Count Three must be dismissed.

Menio Global's allegations in Count Three duplicate its claims that CCS Global's interactions with third-party merchants breached the parties' contract. For example, Menio Global claims that CCS Global "acted in bad faith . . . including by deploying a bait and switch strategy, *in violation of the terms of the Parties [sic] Agreements*, which constitutes a material breach of the good faith covenant." Compl. ¶ 79 (emphasis added). This merely restates the allegations included in Count One and discussed *supra*.

Here, too, the parties' submissions share citations that do not advance Menio Global's position. Take, for example, *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009). Dkt. No. 15-5 at 14-15; Dkt. No. 16 at 9. There, the court expressly recognized that a motion to dismiss will defeat a claim alleging a breach of the implied covenant of good faith and fair dealing when such a claim alleges the same conduct giving rise to a separate breach-of-contract claim. *JPMorgan Chase Bank, N.A.*, 2009 WL 321222 at *5 (collecting cases). The *JPMorgan* court further noted that a party claiming both breach of contract and breach of the implied covenant of good faith and fair dealing must articulate "allegations that are distinct from the factual predicate for its contract claims." *Id.* Menio Global has not done so here.

Since the conduct underlying Counts One and Three is materially indistinguishable, Count Three must be dismissed.

### 3.    Tort Claims

Counts Four and Five also echo Count One. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). Thus, where a defendant owes a plaintiff no separate duties, a plaintiff seeking to

recover in tort cannot do so if its tort claim simply duplicates allegations that a defendant has breached an enforceable contract. *See id.* ("If . . . the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative.").

The general rule precluding duplicative tort actions applies to tortious interference and unfair competition claims. *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 684 (S.D.N.Y. 2023) (collecting cases regarding tortious interference); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 508 (S.D.N.Y. 2018) (same, regarding unfair competition).

Counts Four and Five both suffer from this defect. In Count Four, Menio Global alleges that CCS Global misused its status as a referral partner to divert Menio Global's business to itself, for its own benefit. Compl. ¶¶ 85-92. In other words, Count Four alleges that CCS Global breached the contract provision against forming third-party relationships that conflicted with its relationship with Menio Global. *See id.* ¶ 57. Indeed, like Counts Two and Three, Count Four explicitly refers to the contract, claiming "[d]efendant intentionally breached the Agreements" in so doing. *Id.* at ¶ 92. The contract governs all of CCS Global's misdeeds rearticulated in Count Four, so Menio Global's tortious interference claim must be dismissed.

The same is true for Count Five. There, Menio Global claims that CCS Global, "[w]hile acting as a referral partner . . . used its role to divert business that were [sic] related to referrals intended for [p]laintiff and current accounts away from [p]laintiff . . . to obtain a commercial advantage and commit commercial piracy to take over [p]laintiff's business and compete with [p]laintiff." Compl. ¶ 97. Like Counts Two, Three, and Four, this cause of action merely repeats the allegations in Count One and must be dismissed.

To save Counts Four and Five, Menio Global could have alleged that CCS Global owed it some duty beyond the four corners of the written contract. But extrinsic duties rarely arise from typical arms-length business transactions. *See, e.g.*, *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (finding no fiduciary duty in "an ordinary commercial relationship"). Here, Menio Global acknowledges that it must identify an extrinsic duty, *see* Dkt. No. 15-5 at 16-18, and it makes a passing reference to a "special relationship (that of a referral partner with a fiduciary duty to match) to protect against [the] risk of harm." *Id.* at 22. Yet its filings merely describe a run-of-the-mill commercial relationship—*i.e.*, the kind of arms-length business relationship that does not ordinarily give rise to any special duties.

Alternatively, beyond alleging a breach of an extrinsic duty, Menio Global could have claimed that CCS Global caused special damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (holding that plaintiffs seeking to recover in both tort and contract may be able to do so if, *inter alia*, they allege special damages connected to the tort and unrecoverable under contract); *see also In re September 11 Litig.*, 640 F. Supp. 2d 323, 338 (S.D.N.Y. 2009) ("A tort claim will not lie as a means to enforce a contractual bargain."). But here, too, Menio Global's pleadings fall short.

Plaintiffs must plead special damages with particularity. FED. R. CIV. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."); *Assembly Point Aviation, Inc. v. Richmor Aviation, Inc.*, 2013 WL 12174045 (N.D.N.Y. Sep. 3, 2013) (requiring a plaintiff to "specif[y] . . . itemized special damages it has sustained" to plead separate tort and breach-of-contract claims). This entails more than asserting a round number, even if that number is greater than what a plaintiff alleges as damages under a contract. *SA Luxury Expeditions*, 2022 WL 3718310 *4 (holding insufficient "plead[ing] a specific dollar amount of damage" without

detailing underlying calculations); *Bradley v. Nat'l R.R. Passenger Corp. (Amtrak)*, 797 F. Supp. 286, 295 (S.D.N.Y. 1992) (observing, in the *prima facie* tort context, that New York courts reject mere "allegations of damages in round figures without any further explanation").

Moreover, New York law requires plaintiffs claiming unfair competition to "allege special damages by identifying actual losses and their causal relationship to the alleged tortious act." *SA Luxury Expeditions v. Schleien*, 2022 WL 3718310 *3 (S.D.N.Y. Aug. 29, 2022); *Waste Distillation Tech, Inc. v. Blasland & Bouck Eng'rs, P.C.*, 523 N.Y.S.2d 875, 877 (1988) ("In pleading special damages, actual losses must be identified and causally related to the alleged tortious act."). Because Menio Global has not done so, its complaint does not satisfy these requirements.

Even setting aside that Menio Global's tort claims duplicate its breach-of-contract claim, the additional damages alleged in Counts Four and Five do not meet the heightened level of specificity required. Notwithstanding that Menio Global alleges greater damages in its tort claims—$13 million in each of Counts Four and Five, compared to $11 million in each of Counts One through Three, Compl. ¶¶ 65, 73, 83, 95, 99—it offers no calculations supporting these conclusions.[1] As such, the fact that Menio Global alleges greater damages in Counts Four and Five does not save these causes of action, and they must be dismissed.

---

[1] The Court recognizes that Menio Global claims to have "asserted damages well beyond damages that are recoverable for breach of contract" in its tort claims. Dkt. No. 15-5 at 10. Indeed, describing in slightly different language conduct that Count One characterizes as a breach of contract, Counts Four and Five allege greater damages. But Count Four does not, for example, connect any of the allegations to specific financial harms Menio Global claims to have suffered. Nor does Count Five itemize any "'direct financial loss, lost dealings, or an accounting of the profits caused by the anticompetitive acts at issue,'" as might otherwise suffice. *See SA Luxury Expeditions*, 2022 WL 3718310 at *4 (quoting *CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009)). Instead, Menio Global's tort claims merely allege higher—yet still generalized—damages while relying on the same conduct underlying its breach-of-contract claim.

**B.      Menio Global Has Abandoned Counts Six and Seven**

A plaintiff abandons a claim when it "fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (collecting cases). Such is the case with Menio Global's accounting and injunction claims.

As to Count Six, Menio Global initially sought an accounting as a separate cause of action. Compl. ¶¶ 100-04. CCS Global moved to dismiss the claim, arguing that discovery as to Count One would provide an adequate remedy. Dkt. No. 6-1 at 15. Menio Global assented. Dkt. No. 15-5 at 22 ("Plaintiff agrees that [p]laintiff can seek discovery from [d]efendant of the accounts lost and diverted by [d]efendant . . . ."). The Court considers Count Six abandoned.

With respect to Count Seven, Menio Global's complaint includes a standalone claim for injunctive relief. Compl. ¶¶ 105-13. In its motion to dismiss, CCS Global pointed out that an injunction is not itself a cause of action. Dkt. No. 6-1 at 16. Subsequently, while arguing that it should remain free to pursue an injunction as a remedy, Menio Global "agree[d] that injunctive relief is not a cause of action per se." Dkt. No. 15-5 at 22. While this decision does not necessarily bar Menio Global from continuing to seek an injunction in connection with its surviving breach-of-contract claim, the Court considers Count Seven as a separate cause of action abandoned as well.

**C.      Menio Global's Request to Amend Is Noncompliant and Futile**

In its response to CCS Global's motion to dismiss, Menio Global sought leave to amend its complaint pursuant to Rule 15(a)(1). Dkt. No. 15-5 at 23-24. The Court declines that request because Menio Global failed to comply with the Local Rules governing amendments to pleadings. But even assuming it was otherwise proper, Menio Global's request would still be futile.

The Local Rules provide that "[a] party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers." L.R. 15.1(a). The party's proposal "must set forth specifically the proposed insertions and deletions . . . and identify the amendments in the proposed pleading." *Id.* Yet Menio Global has offered no proposal whatsoever. Dkt. No. 15; *see also Fish v. Tom's of Maine, Inc.*, 705 F. Supp. 3d 72, 82 (N.D.N.Y. 2023) (declining a plaintiff's request to amend in part because of his failure to comply with Local Rule 15.1(a)).

More fundamentally, an amended complaint is unlikely to resolve the infirmities in Counts Two through Seven, which are legally barred or abandoned. True, Rule 15(a)(2) and the Second Circuit generally encourage granting leave to amend. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam) (recognizing a preference for allowing parties to amend, particularly after dismissal).

But futility counsels against doing so. *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 563-64 (E.D.N.Y. 2023) (collecting cases). "'Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (quoting *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018)). As Menio Global has not complied with Local Rule 15.1(a), it is difficult to predict with certainty what form its desired amendments would take. Still, given the original claims' duplicative nature and Menio Global's failure to propose any curative allegations in its opposition brief, nothing suggests that granting leave to amend would elicit a set of new or additional allegations that could revive the precluded or abandoned counts.

As such, the Court declines Menio Global's request for leave to amend.

## V.    CONCLUSION

Menio Global has put forward a series of allegations that repeat, restate, or repackage the same conduct, stretching a breach-of-contract claim across a seven-count complaint. Because New York law forbids such duplicative causes of action, and Menio Global has abandoned two of the original seven counts, its non-breach-of-contract claims must fail.

Therefore, it is

ORDERED that

1. CCS Global's motion to dismiss is GRANTED;

2. Counts Two, Three, Four, Five, Six, and Seven are DISMISSED with prejudice; and

3. Menio Global's request for leave to amend is DENIED.

The Clerk of the Court is directed to terminate the pending motion and set an answer deadline.

**IT IS SO ORDERED.**

Dated:  March 5, 2025
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge